**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DAVID J WOOD,**                                                                                                  **PLAINTIFF**
**trustee of the Richard T. Smith Family Trust # 2**


**V.**                                           **No. 4:05-CV-00124 GTE**


**VALLEY FORGE LIFE INSURANCE COMPANY**                          **DEFENDANT**


**ORDER**

Before the Court are motions in limine submitted by both Plaintiff and Defendant. This Order is intended to provide the parties with the Court's <u>preliminary</u> views on the evidentiary issues raised in limine. The attorneys are directed to appear before the Court on Friday, February 24, 2006, at 10:00 a.m. in Courtroom 502 at which time the parties will be permitted to present additional argument and legal support for their respective positions. The parties are further directed to bring with them on Friday any anticipated exhibits as to which an evidentiary issue has been raised or is anticipated.

**I.      Defendant's First Motion in Limine**

Defendant seeks to prevent Plaintiff from arguing to the jury or from presenting evidence regarding the following fourteen (a through n) categories of evidence:

**a.      Howell suffered from hydrocodone addiction.**

Defendant contends that there is no evidence that Mr. Howell was a hydrocodone addict, that the Betty Ford Center did not diagnose him as a hydrocodone addict, and that there is no evidence that Mr. Howell obtained hydrocodone from any source other than the prescriptions written by his regularly treating physicians. Available prescription records indicate that in the

- 1 -

year 2002, Mr. Howell received on average 20 hydrocodone pills a month for his migraine headaches. Defendant argues that there is an insufficient predicate for Plaintiff's expert, Dr. Harbour, to testify that Mr. Howell was addicted to hydrocodone and that his tolerance was weakened following his detoxification at the Betty Ford Center.

Plaintiff's response states simply that Dr. Harber will testify as to his opinion that Mr. Howell was addicted to hydrocodone and the basis for that opinion.

The Court's preliminary opinion is that there must be some evidentiary basis for the conclusion that Mr. Howell was addicted to hydrocodone and that he obtained it from sources other than his own physicians. In other words, Plaintiff will not be able to assume that Mr. Howell was addicted to hydrocodone, that he obtained hydrocodone from non-prescription sources, or that he was detoxed at the Betty Ford Center from hydrocodone in the absence of an evidentiary supported factual predicate for such an assumption.

Plaintiff has not offered to the Court the specific factual predicate for Dr. Harber's opinion, so it is difficult for the Court to make this determination on the current record. At Friday's hearing, Plaintiff's counsel shall provide the Court with more specific information regarding Dr. Harber's opinion that Mr. Howell was addicted to hydrocodone and the factual predicate for such an opinion. Additionally, if Plaintiff intends to suggest to the jury or present evidence that Mr. Howell obtained hydrocodone from non-prescription sources, he shall so state and indicate the source of such testimony and why it should be admitted.

**b.     Howell repeatedly suffered from loss of consciousness**.

Defendant asserts that there is no evidence in this case that Howell repeatedly suffered from a loss of consciousness. In response, Plaintiff simply states that expert witnesses may rely

on evidence that is not admitted into evidence and that Dr. Harber will testify at trial regarding his reasons for believing that Mr. Howell repeatedly suffered loss of consciousness due to intoxicants.

This presents another foundation issue. Such testimony is relevant and likely admissible, but only if it has an adequate foundation. Again, the Court has not been provided with the foundation for Dr. Harber's proposed testimony that Mr. Howell suffered from loss of consciousness. The Court directs Plaintiff to indicate how Dr. Harber arrived at this conclusion.

> **c.    "At 3:41 in the afternoon Mr. Howell called his son, Dane, and invited him to return to the hotel to watch the World Series baseball game on television at 6:00 p.m."**
>
> **d.    "Mr. Howell spoke on the telephone to his wife sometime after 5:00 p.m." Defendant argues that no admissible evidence supports this statement.**
>
> **e.    "Both Dane Howell and Mr. Howell's wife reported that Mr. Howell did not sound distressed during these conversations."**

Defendant argues that no admissible evidence supports any of these three statements. Plaintiff counters that the statements referenced by Defendant appear in the Beverly Hills Police Department records. To the extent that such statements appear in the police records and that such police records are thereby admissible, Plaintiff's expert's reliance thereon will likely be approved by the Court.

> **f.    "There was no sign of foul play or evidence in the room suggesting suicide."**

Defendant seeks to prevent Plaintiff from suggesting that there was no evidence of suicide in view of the massive qualities of drugs in alcohol in Mr. Howell's body. Plaintiff argues that such a statement is supported by evidence in the police report and in the photographs of the hotel room in which Mr. Howell was found.

This objection is overruled. The circumstances of Mr. Howell's death and the conditions

- 3 -

of the room in which his body were found may be presented to the jury at trial.  Each party obviously believes the evidence supports a different conclusion and each will be permitted to present his/its version of the evidence to the jury and to argue their respective conclusions therefrom.

> **g.     "Viagra contains nitrates and is known to cause irregular heart beat and heart attack."**
>
> **h.     "Maxalt causes risk of coronary vasospasm.**

Defendant argues that Plaintiff has no evidence to support this statement and additionally, that such evidence is irrelevant because Mr. Howell's death was not caused by an irregular heart beat or heart attack.  Plaintiff's response indicates that Dr. Henry Simmons, a medical doctor and toxicologist, will explain the basis for these two statements.

This presents a relevance and a foundational issue.  Again, without knowing the nature of Dr. Simmons opinion and the basis for these statements, the Court cannot rule at this time.  Apparently, viagra was found in Mr. Howell's body.  Thus, this fact is likely to be admissible.  Whether viagra's propensity for causing heart attack and irregular heartbeat is admissible will turn on whether there is some basis for concluding that these propensities could have played any role in causing Mr. Howell's death.

Again, the record before the Court is not sufficiently developed for the Court to rule.

> **i.     "The exertion of sexual activity is known to precipitate heart rhythm problems."**

Defendant argues such evidence is irrelevant and wholly unsubstantiated.  Plaintiff once again refers to Dr. Simmons and indicates that he will explain the basis for this statement. The Court requires more information to determine whether such evidence is admissible.  Without some basis for concluding that Mr. Howell engaged in sexual activity shortly prior to his death

and that such activity likely precipitated serious heart rhythm issues, the Plaintiff will not be permitted to speculate on such matters.

> **j.     "The coroner testified that he can not rule out a coronary event as the cause of death."**

Defendant seeks to exclude this statement, made by the Los Angeles County coroner while being deposed in connection with another case, to which Defendant was not a party.[1] Defendant contends that the only admissible evidence of the coroner's opinion is his conclusion that Mr. Howell's death was the result of suicide.  Of course, the admissibility of the coroner's report and conclusion of suicide is a significant evidentiary issue in this case.  *See* discussion *infra*.

Plaintiff takes the position that his experts may rely on Dr. Scholtz's deposition in forming their opinions.  Plaintiff points out that he provided the Defendant's counsel with a copy of Dr. Scholtz's video deposition before this suit was filed.

The Court would like to discuss this issue further at tomorrow's hearing.  Fed. R. Evid. 703, which discusses the bases of expert opinion testimony, states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.  Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

It does not appear that Dr. Scholtz's deposition taken in another case would be admissible

---

[1] Mr. Howell's death spawned other litigation.  Dr. Scholtz's deposition was taken in the case of *Wood v. Travelers*, U.S.D.C. No. 4:03-CV-565 JMM.

evidence in this case given the fact that Dr. Scholtz was not deposed in this case and is not going to be a witness at trial. The question thus arises, to what extent, if any, may Plaintiff's expert witness rely upon Dr. Scholtz's deposition testimony. If such reliance is deemed proper, how is the Court to keep the otherwise inadmissible portions from the jury?

The Court invites the parties to present additional legal support and argument for their respective positions at tomorrow's hearing.

### k. "Dr. Scholtz did not know the facts of Mr. Howell's hydrocodone use."

Defendant seeks to exclude this evidence contending first, that such evidence is inadmissible since Dr. Scholtz will not appear as a witness at trial, and second, that Dr. Schotlz subpoenaed the Betty Ford Clinic records in his investigation. Such records revealed Mr. Howell's hydrocodone use. Plaintiff counters that his experts will rely on Dr. Scholtz's deposition in which Dr. Scholtz indicated he was "totally unaware" of Mr. Howell's history of hydrocodone use.

This issue is also dependent on the Court's ruling regarding the proper use, if any, of Dr. Schotz's prior deposition by Plaintiff's experts.

### l. "Vicodin is also available for purchase illegally and on the internet."

Defendant argues this statement lacks evidentiary support and is wholly irrelevant. Defendant points out that such evidence is crucial to support Plaintiff's theory that Defendant was a habitual hydrocodone user. Plaintiff's response indicates only that Plaintiff's experts will testify as to the fact of Vicodin's availability illegally and on the internet.

In the absence of an admissible factual predicate to support the contention that Mr. Howell in fact obtained hydrocodone or Vicodin over the internet or illegally, the Court concludes that such evidence is inadmissible.

> **m.    "Mr. Howell was examined at Betty Ford and found not to be a suicide risk."**

Defendant argues this statement, which reflects the initial, cursory evaluation given Mr. Howell upon his admission to the Betty Ford Center is highly prejudicial and probative of nothing. Plaintiff counters that the evaluation was designed to address future suicide variables and risks and that the Betty Ford Center records reflect this evaluation.

To the extent that such information is contained in Mr. Howell's records from the Betty Ford Center, which are likely to be admitted, such evidence is also likely admissible. If admissible it need not be characterized by the parties; the record will speak for itself.

> **n.    "Detoxification from hydrocodone (October 13 to October 19) results in loss of tolerance. Resumed usage of hydrocodone following abstinence can lead to rebound effect and accidental overdose."**

Defendant again relies on the alleged lack of factual support for Plaintiff's proposition that Mr. Howell was addicted to hydrocodone but lost his tolerance while at the Betty Ford Center. Plaintiff response simply states: "Dr. Harber will explain the basis for this opinion."

Once again, the Court must know the foundation for this proposed testimony before it can rule.

## II.    Defendant's Second Motion in Limine

Defendant seeks to exclude the expert opinion testimony of Plaintiff's experts, Dr. Harley Harber, a psychiatrist, and Dr. Henry Simmons, a medical doctor and toxicologist, that Mr. Howell died as a result of an accident.  Defendant's primary objection is that such evidence is not helpful because the opinions are inconclusive regarding the cause of death. Plaintiff responds that Defendant's objections go to the weight of the experts' opinions, and do not affect admissibility.

It appears that Dr. Harber's testimony is sufficiently probative of the issue in question,

that is, Dr. Harber will testify that the most likely cause of death is accidental overdose. Thus, Defendant's concerns do not appear to be valid with regard to the proposed testimony of Dr. Harber.

Dr. Simmons' testimony, however, is less equivocal. Mr. Simmons states:

> the toxicological data do not permit me to determine within reasonable medical or scientific certainty if Mr. Howell's death was the result of suicide or accident . . . The historical features of the case do not permit me to determine within reasonable medical or scientific certainty if Mr. Howell's death was the result of suicide or accident although the majority of facts suggest an accidental death.

(Dr. Simmons' Report).

Plaintiff contends that Dr. Simmons' opinion, even if he cannot say that it is more likely than not that the death was the result of an accident rather than suicide, should be admitted in light of the presumption against suicide, which provides that if the evidence for and against suicide is equivalent, then the jury must presume the death was accidental. But for the presumption against suicide, the Court would be inclined to limit Dr. Simmons' testimony regarding causation. However, it appears that the Plaintiff may prevail in this case by showing that it is equally likely that Mr. Howell's death was the result of an accidental overdose or an intentional suicide.[2] Accordingly, the Court is likely to permit Dr. Simmons' testimony, but will hear further argument from the parties on this issue tomorrow.

Plaintiff further states that Dr. Simmons, who has not been deposed in this case, is completely able to explain how substances and activities can and do precipitate heart arrhythmia and coronary vasospasm. Plaintiff argues that coronary events caused by a combination of toxins

---

[2] The Court questions whether such a presumption in these circumstances raises another issue. That is, does such a presumption against suicide deny the Defendant insurance company the right to contract, or, stated otherwise, does it improperly relieve the Plaintiff of the obligation to comply with the terms of contract agreed upon by the parties?

- 8 -

and exercise are not evident on an autopsy. Again, the Court has some concerns about whether there is an adequate foundation for such testimony, but will hear the parties further concerning this issue tomorrow.

### III.     Plaintiff's Motion in Limine

Plaintiff seeks to exclude the following eight (a through h) categories of evidence:

#### a.     Coroner's opinion and death certificate

Plaintiff seeks to exclude Dr. Stephen Scholtz's conclusion that Mr. Howell's death was the result of suicide. Said conclusion is reflected in the autopsy report and on the death certificate. Plaintiff argues that said opinion does not meet the requirements of Fed. R. Evid. 702 and *Daubert v. Merrill-Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) because it is uninformed to the extent that it should be excluded as unreliable. Plaintiff further claims that such evidence is unduly prejudicial pursuant to Fed. R. Evid. 403.

Independently of the *Daubert* issue, it appears that Arkansas law would not normally permit the admission of such evidence. *See, e.g., American Nat. Life Ins. Co. v. White*, 126 Ark. 483, 191 S.W. 25 (1916); *Dortch v. New York Life Insurance Co.*, 268 F.2d 149 (8th Cir. 1959). Although Plaintiff does not make this argument, Defendant arguably implicitly acknowledges that this is Arkansas law by contending that under California law, the death certificate would be admissible as prima facie evidence of the facts stated therein "in all courts and places." Cal. Health & Safety Code § 103550.[3]

The question arises: should this California statute trump the evidentiary laws applied in

---

[3] The provision states:
Any birth, fetal death, death, or marriage record which was registered within a period of one year from the date of the event under the provisions of this division, or any copy of such record or part thereof, properly certified by the State Registrar, local registrar, or county recorder, is prima facie evidence in all courts and places of the facts stated therein.

- 9 -

Arkansas courts? While Defendant contends that the death certificate is entitled to "full faith and credit in Arkansas Courts," on what legal authority should Arkansas courts defer to California evidentiary laws. This issue has not been adequately briefed. In particular, the parties should address the following question: is not the California statute in question purely an evidentiary or procedural issue, rather than an issue of substantive law; and, what authority would obligate this Court to apply the evidentiary law of California? Additionally, the parties should address whether this issue should be resolved by applying federal evidentiary law rather than Arkansas law, and if so, what is such federal law and does it differ from Arkansas law?

The Court would like to first resolve this evidentiary issue. That is, assuming Arkansas law applies, should not the Los Angeles' coroner's determination that Mr. Howell's death was the result of suicide be excluded from evidence? If the conclusion of suicide is eliminated, then to what degree, if any, do the parties wish to use other information contained in the coroner's report or death certificate? Additionally, does not this ruling eliminate the need for Plaintiff's experts to discuss, criticize or counter Dr. Scholtz's conclusions regarding the cause of death?

### b.     **Betty Ford Center's Records Concerning Suicide**

Plaintiff seeks to exclude from evidence certain statements contained in the Betty Ford Center records which indicate that Mr. Howell had threatened suicide, was a suicide risk or that his family was concerned about his being suicidal. Plaintiff argues that such statements by Mr. Howell's family members are hearsay or that such evidence is too remote in time to be considered relevant.

Defendant counters that such evidence is relevant, more probative than prejudicial, and falls within exceptions to the hearsay rules.

The Court initially rejects Plaintiff's contention that such evidence is too remote in time.

The alleged statements were made just ten days or less prior to Mr. Howell's death.  Mr. Howell entered the Betty Ford Center on October 13, 2002, left against medical advice before dawn on October 19th, and died three days later on October 22, 2002.

Assuming such records are properly authenticated as a medical and/or business record, are not some or all of these hearsay problems eliminated?  To the extent that Plaintiff contends hearsay problems remain, the Court will hear the Plaintiff and Defendant further on such issues at tomorrow's hearing while simultaneously reviewing a copy of the Betty Ford Center records in question.  The parties are directed to appear tomorrow with a complete copy of the records sought to be admitted and to identify in the context of the complete record, the portions which Plaintiff contends should be excluded.

### c. **Beverly Hills Police Department Statements Concerning Suicide and Financial Condition**

Plaintiff details numerous statements contained in the police records that he contends should be stricken as hearsay, are not relevant, or are unduly prejudicial.   Defendant contends such statements should be admitted.

The Court will hear the parties further on this issue tomorrow, while simultaneously reviewing the entire record in which the challenged statements are contained.  The parties are directed to appear tomorrow with a complete copy of the records to be admitted and to identify in the context of the complete record, the portions which Plaintiff contends should be excluded.

### d. **Any Evidence of Alleged Misrepresentation as to Mr. Howell's Financial Condition**

Plaintiff seeks to exclude any evidence pertaining to an alleged misrepresentation concerning Mr. Howell's income and/or net worth on the application for insurance.  Defendant counters that such evidence should be admitted to show the financial pressure and "web of

- 11 -

deceit" facing Mr. Howell prior to his death.  The Court is unclear as to how Defendant intends to present to the jury the fact that Mr. Howell faced financial pressures and that he was facing a state investigation and a lawsuit filed by Bank of America.  The Court is unclear whether Defendant proposes to present evidence related to misrepresentations of Mr. Howell's financial condition in the application for insurance.  Certainly, evidence regarding Mr. Howell's tenuous financial condition provides a motive for Mr. Howell to allegedly take his own life and is therefore likely admissible.  The Court agrees with Plaintiff that there should be no need to get into the fact that Mr. Howell misrepresented his financial condition on the application for the insurance policy in question.

- **e.    Evidence that Richard Smith or his children claimed their Fifth Amendment Privilege and that Richard Smith is the subject of a criminal investigation.**

- **f.    The Personal and Financial Affairs of Richard T. Smith and his children, the businesses with which Richard T. Smith is Associated and the Richard T. Smith Family Trust # 2.**

- **g.    Evidence concerning Richard T. Smith's Alleged Transfer of Assets in Fraud of Creditors Should be Excluded.**

First, the Court inquires whether Judge Moody's prior rulings have effectively dealt with the issues in Plaintiff's favor.  Second, the Court agrees as a general proposition that evidence regarding Richard T. Smith's alleged financial and legal problems should not be admitted in this trial.  The Court rejects at this time that argument that Mr. Howell and Mr. Smith's financial dealings are inexorably intertwined to the extent that it would justify the presentation of such evidence regarding Richard T. Smith.  It may be that in presenting evidence of Mr. Howell's financial condition or legal problems that evidence of Mr. Smith's similar problems are also presented, but such evidence should be ancillary.  The focus in this case is whether Mr. Howell's legal or financial problems provided a motive to commit suicide.  The Court will have to make

more specific rulings in the context of the evidence presented at trial.

### h. The Court should exclude any Questioning of Plaintiff David Wood that would require him to invoke the attorney-client privilege.

Plaintiff seeks to prohibit any questioning of David Wood that would require him to invoke the attorney client privilege. Mr. Wood apparently represents or has represented Richard T. Smith, the Richard T. Smith Family Trust # 2, "Buck" Smith, Courtney Miller, Bank of Salem, Stephens Security Bank, and numerous other persons and entities. Defendant objects to a blanket prohibition pre-trial. The Court cannot rule on this issue in a vacuum. The Court directs counsel to approach the bench **before** asking any questions that counsel believes are likely to invoke a claim of privilege.

## CONCLUSION

This Order is intended to provide the parties with the benefit of the Court's tentative view of the evidentiary issues. The Court will hear the parties out further tomorrow at the pre-trial hearing.

IT IS SO ORDERED this   23rd   day of February, 2006.

                                                            /s/Garnett Thomas Eisele
                                         UNITED STATES DISTRICT JUDGE