**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DAVID J. WOOD,**                                                                            **PLAINTIFF**
**trustee of the Richard T. Smith Family Trust # 2**


**V.**                                          **No.  4:05-CV-00124 GTE**


**VALLEY FORGE LIFE INSURANCE COMPANY**                          **DEFENDANT**


### ORDER DENYING MOTION FOR NEW TRIAL

Before the Court is Defendant's Motion for New Trial, to which Plaintiff has responded.

For the reasons stated herein, the Court concludes that the motion must be denied.

The motion follows the jury's finding, rendered by special verdict, that the death of Mace

David Howell was the result of an accidental overdose rather than a suicide.  (Verdict, Doc. No.

80).  This factual finding entitled Plaintiff to recover accidental death benefits in the principal

sum of a $300,000.00 pursuant to an Accidental Death Benefit Provision ("the Rider") issued on

the life of Mace David Howell.

### LEGAL STANDARD

"The authority to grant a new trial on a motion pursuant to Federal Rule of Civil

Procedure 59 is within the discretion of the district court."  *Douglas Cty. Bank & Trust Co. v.*

*United Financial, Inc.*, 207 F.3d 473, 478 (8th Cir. 2000).

The Court will address separately the various contentions raised by Defendant Valley

Forge Life Insurance Company.

**I.**      **Videoconferencing Testimony of Dr. Rick Smith**

Defendant contends that it was prejudiced by having to present the testimony of its

expert, Dr. Rick Smith, by live video-conference.  This objection was not raised to the Court

prior to presenting Dr. Smith's testimony in this fashion.  By failing to object when the Court

could have acted on the objection, the Defendant has waived the right to object.  *See, e.g., Day v.*

*Toman*, 266 F.3d 831, 837 (8th Cir. 2001)(failure to object to testimony at first available

opportunity waives any complaint against admission, absent plain error).

The Court is further troubled by the disingenuous nature of this objection in light of the

background facts.  For purposes of the record, the Court will detail the events leading up Dr.

Smith's testimony.

The undersigned's involvement in this case did not begin until February 22, 2006, when

the Court received a request from The Honorable James M. Moody's staff to handle a jury trial

scheduled for Monday, February 27, 2006.   Judge Moody was involved in another jury trial,

which would have required this case to be continued absent the agreement of another judge to

handle the trial.  It was the Court's understanding that both parties preferred a trial over a

continuance and that they both believed the case could be tried in two days.  At the time, the

undersigned judge was scheduled to leave town on March 1, 2006 for a pre-scheduled legal

seminar.  Because that schedule only permitted trial on Monday and Tuesday, the Court had its

staff confirm with the parties that the case could, in fact, be completed in two days.

On February 22, 2006, the Court, through its law clerk, offered the parties the option of

delaying the trial until March 7, 2006, when 3 full trial days would be available.  This offer was

declined because Mr. Baber already had depositions scheduled that week.  (See Exhibit 1, e-mail

exchange between counsel and Court's law clerk).  Neither party requested an alternative date.

 It was thereafter agreed that a pre-trial hearing would be held on the morning of Friday

February 24, 2006, and the jury would be selected that afternoon, so that opening statements

could begin first thing Monday, February 27th and the case could be completed by the end of the day on February 28, 2006.[1]

At some point during the discussions about scheduling, one of Defendant's attorneys[2] inquired of the Court's staff whether the Court had the capacity for live videoconferencing to accommodate the testimony of Defendant's expert Dr. Rick Smith, who was scheduled to be in Puerto Rico attending a conference and was not due to return until Tuesday night.   The Court's staff put Defendant's counsel in touch with the person in charge of courtroom technology for the Court.  Nothing further was requested from the Court or its staff.

The Court learned during trial that arrangements had been made with the court in Puerto Rick to present Dr. Smith's testimony to the jury live, via video conference, on Tuesday at 1:00 p.m., Central Standard Time.   The time was scheduled to accommodate Dr. Smith's schedule and return flight home at the request of the Defendant's counsel.  At no time -- until the present motion -- did Defendant's counsel object to presenting Dr. Smith's testimony in this fashion.  In fact, it was at Defendant's suggestion and request that arrangements were made to permit Dr. Smith to testify in this fashion.

Defendant had ample opportunity to object to presenting Dr. Smith's testimony in this fashion.  During the initial discussions about how to schedule the trial, counsel for the Defendant never objected.  During the lengthy pre-trial hearing and the jury selection process on Friday,

---

[1]  In fact, the case did not conclude on February 28th, but actually went to the jury on March 1, 2006.  The Court ended up canceling its scheduled trip anyway.

[2]  The Court wonders if this argument in its entirety might simply be an honest mistake. Since Defendant had four attorneys working on this case and only one, Defendant's lead counsel, made the request to the Court for live video-conferencing, perhaps the other members of Defendant's trial team were unaware that Dr. Smith's testimony was presented in this fashion at Defendant's request.

February 24, 2006, counsel never objected.  During trial on Monday, February 27, 2006, counsel never objected.   And, during trial on the morning of Tuesday, February 28th, counsel never objected.

At the appointed time, a plasma monitor was placed in the witness box.  Dr. Smith appeared live on the monitor.  Dr. Smith could see counsel and the Court, but not the jury.   The technology supporting Dr. Smith's testimony worked flawlessly.  Dr. Smith could be heard and seen clearly and the appearance of the monitor in the witness box itself gave the feel of a live witness.

In weighing the evidence, the jury apparently rejected Dr. Smith's testimony in favor of the testimony presented by  Plaintiff's two experts, Dr. Harber and Dr. Simmons.  And, in hindsight, perhaps Defendant now believes that Dr. Smith's testimony would have been better received if presented in person.  Such after-the-fact belief is no justification, however, for a new trial.   More importantly, the Court concludes that Defendant suffered no prejudice by presenting the testimony of Dr. Smith via live video-conference.[3]

## II.   Alleged Errors in Admissibility of Evidence

Federal Rule of Civil Procedure 61 governs the grant of a new trial based on evidentiary rulings.  It "specifically prohibits the grant of a new trial based on errors in admission of evidence, unless refusal to take such action appears to the court inconsistent with substantial justice."  *Norton v. Caremark, Inc.,* 20 F.3d 330, 338 (8th Cir.1994).  The same is true for the exclusion of evidence.  *See* Fed.R.Civ.P. 61.  Unless the evidentiary ruling complained of would "likely produce a different result" a new trial is not warranted.  *Williams v. Mensey,* 785 F.2d 631

---

[3] This was the first occasion this Court has had to use the technology.  Frankly, the Court was impressed.

(8th Cir.1986).

The Court considers Defendant's claimed errors with this standard in mind.

### 1.     The admission of a picture of Howell was not prejudicial error.

Defendant objects to the Court's admission into evidence of a photograph of David Howell.  The picture was purportedly taken at the Betty Ford Center upon Mr. Howell's admission there on October 13, 2002, approximately ten days prior to his death.

Defendant asserts that "[n]owhere in those records does the photograph at issue appear" but such statement ignores the overwhelming evidence that the picture admitted was in fact taken upon Mr. Howell's admission to the Betty Ford Center.  The Betty Ford Center records, which the Court admitted in their entirety, make specific reference to the fact that Mr. Howell arrived on October 13th at 3 p.m. "very intoxicated," that consent to photograph Mr. Howell was obtained, and that Mr. Howell was photographed.   (Exh. 2, Ford Center 100).   Plaintiff's counsel represented to the Court during the bench conference that he had obtained the photograph in question from the Betty Ford Center, although it was inadvertently omitted from the records initially provided.[4]  Finally, an examination of the photograph itself compels the same conclusion.

A copy of the photograph in question is attached hereto as Exhibit 3.  The pre-printed information at the bottom left hand of the photograph leaves no room to doubt that the photo was in fact Mr. Howell's admission photo from the Betty Ford Center.  The photo shows a date of 10/13/2002 – the same date Mr. Howell was admitted to the Betty Ford Center.  The photograph

---

[4]  In fact, if the Court recalls correctly, Defendant waived any objection to the photograph based on authenticity at the bench conference during trial and reserved a relevance objection. The trial transcript, which is not available at this time, will determine whether this is so.  In any event, even if the objection to authenticity was not withdrawn, the objection was properly overruled.

references Dr. Linton; the Betty Ford Center medical records indicate that Mr. Howell was treated by Dr. Ann Linton.  The photograph references "MR 4009058"; the same number is identified as Mr. Howell's "medical record" number throughout his Betty Ford Center medical records.  Despite Defendant's effort to create doubt in the face of significant and substantial evidence to the contrary, there is no legitimate dispute that the photograph admitted was in fact Mr. Howell's admission photograph from the Betty Ford Center.

The photograph was properly admitted.  Alternatively, the photograph was a true and accurate depiction of David Howell and did not create any unfair prejudice.

### 2.      The exclusion of the Coroner's conclusion of suicide from the Coroner's Report and on the Death Certificate was not prejudicial error.

Prior to the trial beginning, the Court ruled that it would permit the Coroner's Report into evidence, but it specifically excluded from evidence "any statement or suggestion in the Coroner's Report or elsewhere that David Howell's death was the result of suicide or that he intentionally took his own life."   (Doc. No. 73, Court's Order of 2/22/2006).

Mr. Howell's death certificate shows the cause of death as "acute hydrocodone and ethanol intoxication" and the manner of death as suicide.  The Court's ruling also prohibited Defendant from introducing that portion of the death certificate which listed the manner of death as suicide.

The Court was compelled to exclude the conclusion of suicide based on long-standing Arkansas precedent.  In *American Nat. Life Ins. Co. v. White,* 126 Ark. 483, 191 S.W. 25 (1916), the Arkansas Supreme Court held that the admission of a coroner's verdict as evidence in an action on a life insurance policy would violate due process.  The issue in *White* was not suicide, but rather whether the insured life of the decedent had been taken as the result of a violation of the law, in which case there would be no recovery under the terms of the life insurance policy.  In

excluding the verdict of the coroner's jury, Arkansas' highest court reasoned:

> Under our statute the coroner's jury makes an ex parte investigation of supposed crime resulting in homicide for the purpose of aiding in the administration of the criminal laws of the state. Other persons having property interests depending upon the cause of the death are not allowed to participate in the hearing before the coroner's jury with a view to establish rights by the verdict. While the coroner's inquest is made on behalf of the state and a record of it is required to be made and kept, it cannot, on any well-grounded principle of American common law, become evidence in another suit as to the cause of the death investigated. There is no good reason why a stranger to the proceedings should be in any wise bound by the verdict, or that it should be evidence against him of the cause of the death. If such verdict be admissible as evidence, it follows from its very nature that it might also constitute proof of the main fact and of every essential fact in issue. It might not only show the fact of death by violent and external means within a day covered by the policy, but might also find that the person slaying the insured was justified or was not justified in killing him. In either event a property right of one or the other litigants would be determined by a verdict of which no notice was given to him, and without an opportunity to cross-examine the witness whose oaths established it. He would be deprived of his property without due process of law; for the first verdict might be sufficient to maintain the action or sustain the defense, as the case might be, if it was the only evidence offered or obtainable, and thus the verdict of the trial jury would be merely a formal ratification of the coroner's verdict. We cannot see any well-grounded reason why such a verdict should be evidence against a stranger to the proceedings.

Id., 191 S.W. at 28.  *See also Dortch v. New York Life Ins. Co.*, 268 F.2d 149 (8th Cir. 1959)(applying Arkansas law)("the duly certified verdict of a coroner's jury is not admissible for the purpose of proving" the life insurance company's defense of suicide).

Similarly, Mr. Howell's business partner, David Wood, had no opportunity to participate in the coroner's investigation, made in California for purposes established by California law.

The Court followed Arkansas law in excluding the coroner's report of suicide.  This Court knows of no Arkansas authority permitting the admission of a coroner's conclusion of suicide.  Nor has Defendant cited any such authority in its motion for new trial.

### III.     Jury Instructions

Defendant raises multiple issues associated with the manner in which the Court instructed

the jury.  In this diversity case, Arkansas law governs the substance of the jury instructions but federal law governs whether the Court abused its discretion in refusing or admitting jury instructions.  *Crump v. Versa Prods., Inc*., 400 F.3d 1104, 1107 (8th Cir. 2005).  District courts enjoy "wide discretion" when drafting jury instructions.  *Omega Healthcare Investors, Inc. v. Lantis Entres., Inc.*, 256 F.3d 774, 776 (8th Cir. 2001).

"A district court has broad discretion to instruct the jury in the form and language it considers fair and adequate to present the substantive law." *Grogan v. Garner,* 806 F.2d 829, 836 (8th Cir.1986). Further, "a party is entitled to instructions reflecting that party's theory of the case if the instruction is legally correct and there is evidence to support it." *Bursch v. Beardsley & Piper,* 971 F.2d 108, 112 (8th Cir.1992). "A party is not, however, entitled to a specific formulation of an instruction." *Gray v. Bicknell,* 86 F.3d 1472, 1485 (8th Cir.1996); *See also Scamardo v. Scott County,* 189 F.3d 707, 711 (8th Cir.1999) (stating that the form and language of the jury instructions are committed to the sound discretion of the district court so long as the jury is correctly instructed on the substantive law in the case).

### 1.  Posture of Case

To appreciate fully the nature of Defendant's arguments on this point (and why there was no error), it is helpful to understand the posture of this case when it arrived for trial.

Plaintiff David Wood, as Trustee for the Richard T. Smith Family Trust # 2, initiated this action suit to recover accidental death benefits under a $300,000.00 Accidental Death Benefit Provision ("the Rider") issued on the life of Mace David Howell.  In response, Valley Forge denied that any benefits were due under the Rider.  Valley Forge also asserted a counter-claim in which it contended that both the original Policy, pursuant to which Defendant had already paid Plaintiff the amount of $2,022,610.70, and the Rider should be declared void because of false

and fraudulent statements made in connection with the application therefor.

Prior to trial, on summary judgment, Defendant Valley Forge (seeking to recover for the proceeds it paid on the basic life insurance policy) lost on three different theories for avoiding the Policy's two year incontestability period.  The Plaintiff lost on its theory that the Rider was likewise incontestable.  Valley Forge lost on its sickness and disease defense to payment under the Rider.  Plaintiff lost on his bad faith defense contention when  the Court ruled that Valley Forge had a good-faith defense – suicide – for denying the claim.  (Judge Moody's Order of February 15, 2006, Doc. No. 55).

Judge Moody's Order resolved all factual and legal issues presented except one – "whether M. David Howell's death was the result of suicide or accident" in connection with the Rider.   (Judge Moody's Order of February 15, 2006, Doc. No. 55, at p. 14).

Accordingly, the case that arrived for trial was very narrow in scope.  It required only that the jury determine whether David Howell's death was the result of an accidental overdose (in which case benefits were payable under the Rider) or a suicide (in which case no benefits were payable).  There was no other possibility – the death was either accidental and benefits were owed, or the death was intentional and no benefits were owed.

The proposed statement of the case submitted by Defendant prior to trial recognized the narrow focus of the trial.   (See Ex. 4, Defendant's Proposed Statement of the Case).  The Court read a similar statement of the case to the jury panel, without objection.   Yet, during the trial, the Defendant repeatedly attempted to interject issues that were not relevant to whether Howell's death was an accidental overdose or suicide, issues which, in the Court's view, were not justified by the evidence or necessary to resolve the case, but only attempted to revisit Judge Moody's

prior adverse rulings or to get before the jury evidence of the coroner's conclusion of suicide.[5]

     **2.**    **The Jury Instructions appropriately instructed the jury on Valley Forge's burden to prove suicide.**

Defendant Valley Forge contends that this Court erred when it gave Instruction No. 9

because it placed the burden exclusively on Valley Forge.

The Court's Instruction No. 9 reads:

> IT IS UNDISPUTED IN THIS CASE THAT THE DECEDENT, DAVID HOWELL, INTENTIONALLY CONSUMED SUBSTANCES – INCLUDING HYDROCODONE, ALCOHOL, COCAINE, VIAGRA AND VALIUM – WHICH ACTING ALONE OR IN CONCERT CAUSED HIS DEATH.
> YOU ARE INSTRUCTED THAT THE PROOF IN THIS CASE THEREFORE WILL PERMIT ONLY ONE OF TWO ALTERNATIVE INFERENCES: DAVID HOWELL'S DEATH WAS EITHER THE RESULT OF SUICIDE OR OF AN ACCIDENTAL OVERDOSE.
> UNDER THE APPLICABLE LAW, THERE IS A PRESUMPTION AGAINST SUICIDE, AND THIS PRESUMPTION ARISES EVEN WHERE IT IS SHOWN BY PROOF THAT DEATH WAS SELF-INFLICTED. THE DEATH IS PRESUMED TO HAVE BEEN ACCIDENTAL UNTIL THE CONTRARY IS MADE TO APPEAR.
> THEREFORE, **AS APPLIED HERE** THE LAW PRESUMES MR. HOWELL'S DEATH WAS ACCIDENTAL UNLESS AND UNTIL THE DEFENDANT PROVES BY A PREPONDERANCE OF THE EVIDENCE THAT HIS DEATH WAS THE RESULT OF SUICIDE, THAT IS, THAT WHEN HE CONSUMED THE DRUGS AND ALCOHOL HE DID SO WITH THE INTENT THEN AND THERE TO TAKE HIS LIFE.

(emphasis added).

Defendant argues that this instruction inappropriately relieved the Plaintiff of his burden

to prove accidental death.

The evidence at trial was undisputed that David Howell's death was caused by the

ingestion of drugs and alcohol. The sole issue for the jury's determination was David Howell's

---

[5] For example, Defendant repeatedly asserted that it was necessary to show that Plaintiff submitted the Death Certificate showing the cause of death as "suicide" to demonstrate that it was justified in denying the claim. Yet, with the dismissal of the bad faith claim and given Judge Moody's other rulings in the case, such evidence was unnecessary, contrary to the Court's exclusion of such evidence, and if admitted, would have been unduly prejudicial.

intent – did he ingest the drugs intending to take his own life or not.  There were no other possibilities.    The evidence at trial, the narrowness of the issue presented, and the presumption in Arkansas against suicide established that Plaintiff was entitled to prevail unless and until the Defendant proved that Howell's death was a suicide.

The cases cited by the Defendant are inapplicable here.  In *Wallin v. Insurance Co. of North America*, 268 Ark. 847, 596 S.W.2d 716 (Ark. App. 1980), the decedent was shot in the chest.  The jury had to determine whether the death was due to suicide, accident or "possibly homicide at the hands of an unknown person." *Id.*, 268 Ark. at 849, 596 S.W.2d at 718.   Where another possible cause of death exists, a possibility which, if accepted by the jury would mean that the plaintiff failed to satisfy his burden to prove accidental death, then certainly the jury should be instructed on the plaintiff's burden to prove that the death was accidental.

 This case, however, is a different story.  The undisputed evidence at trial – that the immediate cause of death was an overdose of drugs (or drugs and alcohol) – combined with Judge Moody's legal rulings -- made it unnecessary to instruct the jury on the Plaintiff's burden to prove the death was accidental.  That is, the only possible cause of death was an accidental overdose triggering coverage under the Rider unless the Defendant prevailed on its affirmative defense of suicide.  Under these circumstances, the Court determined that it would have more been confusing, unnecessary and, indeed, prejudicial, to instruct the jury on Plaintiff's burden to prove accidental death as requested by Defendant.

The Court does not quarrel with Valley Forge's general assertion that ordinarily it would be the Plaintiff's burden to prove that the deceased died by an accident thereby triggering coverage under the Rider.  Plaintiff met that burden at trial.  Plaintiff presented substantial evidence that the overdose was accidental, that is, at the time (or over the period of time) that

David Howell ingested the substances he did not "then and there" intend to bring about his own death.  Plaintiff, through Dr. Simmons, presented evidence that Mr. Howell had a large amount of hydrocodone in his system, in quantities and ratios to acetaminophen (normally present with hydrocodone in the hydrocodone version prescribed to Mr. Howell) that suggested Mr. Howell could have ingested the drug over a period of time – even days -- rather than in the few hours prior to his death.  Dr. Simmons also testified about the other drugs in Mr. Howell's system, which included Viagra, Valium, cocaine and alcohol.  Condoms – including one used condom – were visible in the hotel room where Mr. Howell was found.   Plaintiff's second expert, Dr. Harley Harber, a psychiatrist specializing in the treatment of addiction, testified that in his opinion it was more likely than not that Mr. Howell, on this particular occasion, overindulged and brought about his own death unintentionally.  Dr. Harber also testified that Mr. Howell, a long-time user of prescription drugs, may have failed to take into consideration his body's response to being deprived of such drugs while at the Betty Ford Center.   In other words,  Mr. Howell's system may not have been able to tolerate the same quantity and mix of drugs after being deprived of any such substances while at the Betty Ford Center.  Dr. Harber testified that in his decades of treating addicts, this scenario often resulted in accidental overdose.[6]

Dr. Harber's opinion – if accepted by the jury – would mean that Mr. Howell's death was not a suicide.   The Defendant made much of Defendant's financial condition and the pending criminal investigation against him.  Certainly, there was evidence from which the jury could have found that Mr. Howell intended to take his own life.  The issue was one of fact for the jury.

In determining how to instruct the jury, the Court considered Judge Moody's prior ruling

---

[6] Dr. Smith disagreed with the notion of "tolerance."  The jury was entitled to believe Dr. Harber's opinion over that of Dr. Smith's.

that "if a jury finds that Howell died from an accidental overdose the Defendant is liable under the Rider." (Order, Doc. 55 at p. 12). The Court also considered the proof presented by Plaintiff at trial, proof which satisfied Plaintiff's obligation to present a prima facie case of "accidental death" triggering coverage under the Rider. *See, e.g.*, Couch on Insurance, § 138:58 ("While the beneficiary bears the burden of proof on the issues of coverage and the accidental nature of the death, the beneficiary makes its prima facie case by showing that death was by bodily injury effected by external and violent means coupled with the presumption against suicide.")

The jury had to find for the Plaintiff unless the Defendant prevailed on its defense of suicide. Accordingly, in instructing the jury it was appropriate to focus on the defense of suicide.[7] "[U]nder Arkansas law, the burden of establishing the defense of suicide is upon the insurer." *Cypress Farms, Inc. v. Employer's Life Ins. Co. of America*, 479 F.2d 124, 126 (8th Cir. 1973)(applying Arkansas law); see also *Wallin v. Insurance Co. of North America*, 268 Ark. 847, 849 596 S.W.2d 716, 718 (1980)("The burden is upon the one interposing the defense of suicide to establish the fact of suicide by a preponderance of the evidence."). Finally, a plaintiff "is not required to prove that the death of the insured did not result from suicide." *Aetna Life ins. Co. v. Newbern*, 127 F.2d 171, 173 (8th Cir. 1942)(applying Arkansas law).

The Court rejected as confusing and inapplicable the following instruction Defendant tendered on accidental death:

> The burden is on plaintiff beneficiary to prove that the insured died by accidental means. Accidental means are those means that produce results that are not the natural and probable consequences of the actions of the insured, that take place without the foresight or expectation of the insured, and that cannot be reasonably anticipated by the insured.
> Whether a killing is accidental, however, is to be determined from the standpoint

---

[7] Because Defendant had the burden to prove suicide in order to prevail, the Court granted Defendant's request to begin and end closing argument.

of the insured.  If the insured was shot through external force not of the insured's own choice, then as to the insured the killing was accidental even though it may have been the result of the voluntary act of another.

If the insured anticipated or had reason to anticipate that [the decedent] would act in the way [the decedent] did, the shooting was not by accidental means.  On the other hand, if the insured did not anticipate, or have reason to anticipate that [the decedent] would get shot, then the insured's death would be by accidental means.  You will determine the issue of accidental means on consideration of all the facts and circumstances in evidence.

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, Civil § 126.70 (5th Edition 2000)(hereinafter referred to as "Federal Jury Practice Instructions").

All of the case cited in the Notes supporting Federal Jury Practice Instruction § 126.70 instruction involve either shootings or a stabbing — that is, actions in which a third-party wielding a deadly weapon caused the death of the insured.  The instruction is designed to determine whether the death could still be considered "accidental" from the perspective of the insured even though it was intentionally inflicted.  *King v. State Farm Life Ins. Co.*, 448 F.2d 597, 599 (8th Cir. 1971)(applying Mississippi law).  In such cases, the choice is not between accident and suicide because a third party rather than the decedent causes the death.  Such instruction is inapplicable here.   In this case, no third party caused Mr. Howell's death.  Rather, Mr. Howell himself ingested the substances which brought about his death.  The sole question for the jury was his intent on that particular occasion (then and there) – did he ingest such substances intending to bring about his own death, that is, to commit suicide or did he do so as part of his ongoing pattern of polysubstance abuse.

The instruction following Federal Jury Practice Instruction § 126.70 purported to instruct the jury on the "Essential Elements" of "Self-Destruction."  Instruction § 126.71 reads:

Unless you believe that plaintiff _____ is not entitled to recover because [the decedent] committed suicide, your verdict should be for the plaintiff _____ if you find:

One: defendant _____ issued its policy of life insurance to [the decedent], and

Two: The policy was in force on the date of death of [the decedent], and

Three: plaintiff _____ was then the beneficiary of the policy.

The burden is on the defendant to prove by a preponderance of the evidence that [the decedent] committed suicide.

If, after considering all of the evidence, there is a fair question in your minds as to whether the death of the decedent was due to an accident or to suicide, then your verdict should be for plaintiff _____. A fair question is an honest question, one that is based on the evidence or lack of evidence. A fair question is not, however, a vague, speculative, or fanciful question, or the possibility of a question, but is a real misgiving, which results in there being a fair question in your mind. If, on the other hand, after considering all the evidence, there is no fair question in your mind and you believe that [the decedent] committed suicide, then your verdict should be for defendant insurance company.

Federal Jury Practice Instructions, § 126.71.

There being no question as the existence of the first three requirements, the Court

modified the instruction and tendered it to the parties for their consideration. The Court's

Instruction No. 9A reads:

IF, AFTER CONSIDERING ALL OF THE EVIDENCE, THERE IS A FAIR QUESTION IN YOUR MINDS AS TO WHETHER THE DEATH OF THE DECEDENT WAS DUE TO AN ACCIDENT OR TO SUICIDE, THEN YOU SHOULD FIND THAT THE DECEDENT'S DEATH WAS DUE TO AN ACCIDENTAL OVERDOSE AND YOUR VERDICT SHOULD BE FOR THE PLAINTIFF. A FAIR QUESTION IS AN HONEST QUESTION, ONE THAT IS BASED ON THE EVIDENCE OR LACK OF EVIDENCE. A FAIR QUESTION IS NOT, HOWEVER, A VAGUE, SPECULATIVE, OR FANCIFUL QUESTION, OR THE POSSIBILITY OF A QUESTION, BUT IS A REAL MISGIVING WHICH RESULTS IN THERE BEING A FAIR QUESTION IN YOUR MIND. IF, ON THE OTHER HAND, AFTER CONSIDERING ALL OF THE EVIDENCE, THERE IS NO FAIR QUESTION IN YOUR MIND AND YOU ARE CONVINCED BY A PREPONDERANCE OF THE EVIDENCE THAT THE DECEDENT DAVID HOWELL COMMITTED SUICIDE, THEN YOUR VERDICT SHOULD BE FOR THE DEFENDANT VALLEY FORGE LIFE INSURANCE COMPANY.

Defendant asserts that the above instruction unfairly used a "fair question" standard and

in the process elevated the appropriate preponderance standard to beyond a reasonable doubt.

The Court disagrees.

The instruction above is taken directly from Federal Jury Practice and Instructions 5th §

126.71. The "fair question" instruction is given in connection with the specific instruction to the

jury, in Instruction 9, that the death is presumed to be accidental unless "the Defendant proves by

a preponderance of the evidence that his death was the result of suicide."  Taken as a whole, the

instructions do not elevate the standard of proof beyond the preponderance of the evidence.  The

Notes to § 126.71 indicate that the instruction is designed incorporate the presumption against

suicide while avoiding mention of the word "presumption."

     Admittedly, the Arkansas Supreme Court has not approved a "fair question" instruction

such as the one given by the Court in this case.  It has, however, approved instructing the jury on

the presumption against suicide.  "Instructions that simply tell the jury that before it can find for

the insurance company, it must find by a preponderance of the evidence that the deceased

intentionally killed himself may not always be sufficient, unless such instructions are

accompanied by a proper instruction on the presumption against suicide." *Security Life & Trust*

*Co. v. First National Bank*, 249 Ark. 572, 578, 460 S.W.2d 94 (1970)(affirming trial judge's

decision to grant new trial following jury verdict for insurer based on failure to give additional

instruction on the presumption against suicide).

     In *Cypress Farms*, the Eighth Circuit approved the following instructions, after a

challenge by the policy beneficiary as insufficient to "emphasis the strong presumption against

suicide as recognized by Arkansas law."  *Cypress Farms*, 479, F.2d at 125.  The trial court

instructed the jury as follows:

> "*There is a presumption against suicide*, or death by any other unlawful act, and this
> presumption arises even where it is shown by proof that death was self-inflicted- *the*
> *death is presumed to have been accidental until the contrary is made to appear*.  This rule
> is founded upon the natural human instinct or inclination of self-preservation, which
> renders selfdestruction an improbability with a rational being."

*Id*. at 125 (Instruction 9, emphasis in original).

And, in instruction # 8 the jury was advised that " . . . the insurance company is required to prove by a preponderance of the evidence that [decedent] had the intention to and did kill himself." *Id*. at 125 and n. 1 (emphasis in original).

As the Arkansas Supreme Court noted in discussing the proof necessary to overcome the presumption against suicide:

> "Another apt statement of the rule is that where the cause of death is unexplained or undisclosed by evidence, or where evidence tending to prove self-destruction is contradicted, or impeached, or some evidence adduced is consistent with a reasonable hypothesis that the death was not self-caused, the presumption against suicide prevails. And if there be a doubt, the evidence being conflicting and nearly evenly balanced, whether the death was caused by suicide or accident, the presumption is in favor of accident. So, where the evidence points equally or indifferently to accident or suicide, the theory of accident is adopted. **And the force of the presumption based upon the love of life must, it is decided, be given effect against the defense of suicide, unless the evidence discloses no other reasonable hypothesis**."

*Metropolitan Life Ins. Co. v. Graves*, 143 S.W.2d 1102, 1106 (1940)(omitting citation to Couch on Insurance)(emphasis added).  The court's comments occurred in the context of a case in which the jury had to determine whether the decedent insured accidentally or intentionally shot himself. Thus, like the present case, there were only two alternatives for the jury – accident or suicide.

In *Aetna Life Ins. Co. v. Newbern*, 127 F.2d 171, 173 (8th Cir. 1942)(applying Arkansas law)(emphasis added), the Eighth Circuit approved the trial court's jury instructions, which it summarized as follows:

> The court refused the instructions requested by defendant and at the request of plaintiff and over the objections of the defendant charged that the plaintiff is not required to prove that the death of the insured did not result from suicide; that the burden was on the defendant to show by a preponderance of the evidence that the insured committed suicide; that if the evidence in the whole case is evenly balanced on the issue of suicide, the verdict must be for the plaintiff; and that **if upon the issue of suicide the evidence is merely speculative or conjectural the verdict should be for the plaintiff**.

(emphasis added).

The Court concludes that the "fair question" language in Instruction 9A was simply a

means of advising the jury on Arkansas' strong presumption against suicide and that speculation or conjecture regarding suicide would not suffice to satisfy the Defendant's burden.  Arkansas law is clear that the presumption against suicide is a strong one and that the jury should not use speculation or conjecture to overcome the presumption.  The Court specifically advised the jury in Instructions 9 and 9A that the Defendant's burden was to establish suicide by a preponderance of the evidence, and it defined the preponderance of the evidence standard separately for the jury in Instruction No. 7.

The Court likewise rejects the Defendant's contention that the Court erred when it instructed the jury in the last sentence of Instruction No. 9 that to prove suicide the Defendant had to show that "when he consumed the drugs and alcohol he did so with the intent **then and there** to take his life."  (emphasis added).  This language merely focuses on the appropriate time frame in determining Mr. Howell's intent.  Mr. Howell must have intended to commit suicide at the time he ingested the substances which brought about his death.  Defendant's suggestion that the Court improperly added a temporal element of proof to its suicide defense, while creative, is contrary to the law.

Finally, with regard to Defendant's suggestion that it was deprived of "fair notice" regarding the instructions, the Court rejects that contention.  To the extent that Defendant's objection could be read to suggest that a trial court acts inappropriately when it works to fashion jury instructions at the conclusion of a trial to adequately state the law and to frame the issues to be put to the jury or that there exists some magical notice period with which the Court must comply, the Court is compelled to disagree.  The nature of trial practice dictates that the process of arriving at final jury instructions is always hectic and in a constant state of flux.  When the Court determines that the instructions tendered are not adequate, such conclusion normally

occurs during trial.  Neither counsel nor the Court have the luxury of leisurely ruminating over the optimal manner in which to instruct the jury.  The Court consults the law and based upon the evidentiary record does its best to instruct the jury fairly and adequately on the factual issues to be put to it for decision.

Because the instructions tendered by the parties in this case did not fairly and accurately state the law, the Court had to draft some of its own instructions.  The Court presented counsel for the parties with a draft of its proposed instructions in advance of the jury instruction conference and permitted them time to review the instructions prior to making a record on the jury instructions.  Counsel for the Defendant raised no objection to not having sufficient and adequate time to review the Court's proffered instructions.  This Court in its thirty-plus years as a trial judge has always followed the practice of giving counsel advance notice of how it intends to instruct the jury and a fair opportunity to object on the record to said instructions or to proffer alternative instructions.[8]  The Court did so in this case.

Considering the jury instructions as a whole, the Court concludes that they appropriately instructed the jury on applicable Arkansas law.

## CONCLUSION

For the reasons herein stated,

IT IS HEREBY ORDERED THAT Defendant's Motion for New Trial (Docket No. 86) be, and it is hereby, DENIED.

---

[8]  That Defendant in fact proffered its own version of the instructions given by the Court undercuts its "fair notice" objection.

IT IS SO ORDERED this  5th  day of April, 2006.


                                        /s/Garnett Thomas Eisele
                                        UNITED STATES DISTRICT JUDGE



"Brent Baber"
<brentbaber@comcast.net>

02/22/2006 01:35 PM

To  <Edie_Ervin@ared.uscourts.gov>

cc  "Herb Rule" <HRULE@RoseLawFirm.com>

bcc

Subject  RE: IMPORTANT -

I am scheduled to fly to El Paso, Tx. on March 7 for depositions beginning March 8.
     -----Original Message-----
**From:** Edie_Ervin@ared.uscourts.gov [mailto:Edie_Ervin@ared.uscourts.gov]
**Sent:** Wednesday, February 22, 2006 12:35 PM
**To:** BrentBaber@comcast.net; hrule@roselawfirm.net
**Cc:** Cherie_Westbrook@ared.uscourts.gov
**Subject:** IMPORTANT -

Judge proposes the following alternative to trial next week. We could spend this Friday and/or
Monday delving into the pre-trial issues and then begin the trial on Tuesday, March 7, 2006. We
would have 3 trial days rather than 2 if we do this.

Please get back to me or to Cherie ASAP on this.

Thanks.

edie

Edie Ervin
Law Clerk to Senior U.S. District Judge G. Thomas Eisele
Little Rock, Arkansas
(501) 604-5161 (direct)

EXHIBIT   1

# Bet ̣ Ford Center - Rancho M ̣ ̣ge
## Progress Notes

CL.B.003

---

**Site Unit:** Ottenstein  **Assigned Date:** 10/13/2002  **Range Selection:** Assigned Date  **Print:** Descending Order

---

Pt is a 54 year old male from Little Rock, AR referred by John Southworth. This is an intervention. Pt arrived at approximately 3pm and was very intoxicated. Conditions of admissions and consent to photo were signed, armband put on, picture taken and pt was released to Nursing to begin his treatment. Late paperwork to be completed tomarrow.

Record by: Sandra Tatchell, Admissions Counselor      Password in lieu of Signature

EXHIBIT 2

FORD CENTER 100

---

Howell, Mace D.
ID#: 15969  MR#: 4009058
TX STATUS: Professional Eval Program for 10/13/2002 03:05:48 PM



15969

HOWELL. MACE DAVID
ACCT 430862351  M  06/21/1948
DR  LINTON
10/13/2002  MR  4009058
ID  15969



EXHIBIT 3

UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**DAVID J. WOOD,**
**trustee of the Richard T. Smith Family Trust #2**                                    **PLAINTIFF**

v.                                            **NO. 4-05-CV-124**

## VALLEY FORGE LIFE INSURANCE COMPANY                                    **DEFENDANT**

## DEFENDANT'S STATEMENT OF THE CASE

In June, 1998, Richard T. Smith ("Smith") applied to Valley Forge Life Insurance Company ("Valley Forge") for a life insurance policy on the life of his business partner, M. David Howell ("Howell"). In November, 1999, Smith applied for and was issued an Accidental Death Benefit rider in the amount of $300,000 on Howell.

In June, 2002, Smith transferred the Valley Forge policy, including the Accidental Death Benefit rider, to David J. Wood, Trustee of the Richard T. Smith Family Trust #2 (the "Trust").

Howell died on October 23, 2002 at the Peninsula Hotel, Beverly Hills, California. An autopsy of Howell was conducted by the Deputy Medical Examiner of Los Angeles County, California, who determined that the immediate cause of Howell's death was "acute hydrocodone and ethanol intoxication;" and that the manner of Howell's death was suicide.

Valley Forge paid the policy amount in February, 2003, but did not pay the accidental death benefit, because it believes Howell's death was not accidental.

David J. Wood, Trustee ("Wood") brings this claim for $300,000 in accidental death benefits. Wood contends that Howell's death was accidental.

Valley Forge contends that Howell's death was not accidental, but that he died by suicide, which is not covered by the Accidental Death Benefit rider.

ROSE LAW FIRM
a Professional Association
120 East Fourth Street

*EXHIBIT 4*

Little Rock, AR 72201
(501) 375-9131
(501) 375-1309 (fax)

By: _____

Herbert C. Rule III, Ark. Bar No. 64037
Amy Lee Stewart, Ark. Bar No. 88167
Byron J. Walker, Ark. Bar No. 2002114
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of February, 2006, a true copy of the foregoing Statement

of the Case was sent via facsimile and hand delivery to the following counsel of record:
G. Brent Baber
Baber Law Offices
210 State Street
Little Rock, AR 72201

_____
Herbert C. Rule III

2

134873_1